IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ZAFAR KHAN,                        :
    Plaintiff                  :

                            :

    v.                        :        CIV. NO. AMD 05-180

                            :

OCB RESTAURANT COMPANY,   :
    Defendant              :

...o0o...

MEMORANDUM OPINION

Plaintiff, Zafar Khan, filed this lawsuit pro se on January 21, 2005, alleging disparate

treatment national origin discrimination and retaliation under 42 U.S.C. § 1981, Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and state anti-discrimination law.[1]

Thereafter, counsel entered an appearance on behalf of plaintiff and filed an amended

complaint. Khan is 60 years old and is a native of Pakistan. Defendant is the OCB Restaurant

Company ("OCB"), which operates a chain of restaurants throughout the country. Discovery

having concluded, defendant has filed a motion for summary judgment, which plaintiff has

opposed. The court conducted an oral hearing at which counsel presented extensive

argument. For the within reasons, the motion shall be granted.

I.

The facts shall be set forth most favorably to Khan's view of the evidence in the

---

[1]It does not appear that plaintiff may bring a private action under state anti-discrimination law but, in any event, the elements of any such state law claim on which plaintiff relies do not differ materially from the elements of plaintiff's claim under Title VII and § 1981. *See generally Settle v. Baltimore County,* 34 F.Supp.2d 969 (D.Md.1999), *aff'd,*203 F.3d 822, 2000 WL 51283 (4th Cir.2000)(table).

summary judgment record, but the court will not indulge unwarranted and unreasonable

inferences.

Gerald Sommer, the General Manager, hired Khan as a Service Shift Supervisor at

the Old Country Buffet Restaurant in Gaithersburg, Maryland, on March 1, 2001. Ed

Hughes, an Area Director, was Sommer's superior. Throughout Khan's employment,

Sommer was Khan's second level supervisor. At the motions hearing, Khan conceded that

Sommer never harbored any discriminatory or retaliatory animus towards Khan and that

Sommer treated him with respect and civility. (Despite Khan's assertions that, although

Sommer harbored no discriminatory animus, Sommer allowed *other managers and*

*supervisors* to act discriminatorily towards Khan, there simply is no genuine dispute in the

record that Sommer, who, as mentioned, hired Khan, was a participant in all of the adverse

decision-making about which Khan complains in this case. This fact seriously undercuts

Khan's theory that he was the object of unrelenting mistreatment on the basis of national

origin.)

Eventually, Khan became a participant in defendant's "Internal Promote Program,"

wherein OCB provided the opportunity for their employees to advance within the company

to a management position. OCB soon terminated Khan's participation in the management-

training program because it concluded that Khan did not possess the necessary English

language skills required of managers at OCB. Hughes told Khan that he needed to become

more proficient in English and asked Sommer to look for programs that could assist Khan

to improve in this area. Sommer found an "English as a Second Language" program, but Khan chose not attend.[2]

In January 2003, Khan (apparently motivated to escape from Hughes's chain of command and to work closer to his residence) sought a transfer to the OCB restaurant in Catonsville, Maryland. Defendant denied the transfer request on the basis that there was no need for someone in Kahn's position at that location and, furthermore, the Catonsville location did not have guest volume sufficient to support such a position. However, the then Catonsville General Manager, Ray Cameron, states in an affidavit submitted by Khan that he was not aware of any guest volume issue that would affect the desirability of the transfer, that he did not participate in the decision to deny the transfer (contradicting Hughes), and that it was unusual and inconsistent with company policy for an Area Director such as Hughes to be involved in such routine decisions.

In March 2003, as a result of defendant's staffing decisions, Khan was likely to be transferred to work some night shifts. Khan requested that he remain on the day shift because certain medications he was taking made night driving unsafe. OCB accommodated this request and Khan worked no nights. Also as a result of worker demand issues, Khan (like other employees) faced a reduction in his hours; however, Khan's hours, alone among

---

[2]The overarching theory of Khan's case is that Hughes displayed an animus towards him, based his antipathy for Khan's national origin as a Pakistani, from their very first meeting and that, in effect, Hughes orchestrated a surreptitious campaign to terminate Khan's employment. Thus, Khan argued that he was removed from the management-training program based on Hughes's intentional discriminatory motive.

employees, were not reduced.

On or about May 13, 2003, Khan filed a charge with the Equal Employment Opportunity Commission, alleging discrimination, retaliation, and harassment against OCB. (The charge centered on alleged mistreatment and harassment, including the use of demeaning epithets, by Hughes). Thereafter, it is clear in the record, the managers at OCB were aware of the existence of the charge and seemingly took a "hands off" approach to Khan in their dealings with him.

For about a year after he filed his discrimination charge, as Khan readily conceded at the hearing, he was treated in a non-discriminatory manner by his supervisors and there were no significant problems in the workplace. Then, in May 2004, Rochelle Prather was hired as Service Manager at the Gaithersburg OCB, thus becoming Khan's immediate supervisor. Prather and Khan were at odds from the start of her tenure. There is substantial evidence in the record, including admissible hearsay in the form of an admission by Khan, that Khan did not take well to supervision by a female based on ostensible "cultural differences" between Khan's perspective and that prevalent in the modern American workplace. In any event, Prather insisted that she would not treat Khan differently than the manner she treated other employees she supervised just to keep him from complaining, and in particular, simply because he had filed a discrimination charge based on the alleged acts of other managers prior to her arrival.

The Khan/Prather relationship deteriorated throughout the summer and early fall of

2004, and matters finally came to a head in October of that year. Prather "wrote up" Khan on three separate occasions in quick succession. The first occurred on October 17, 2004, when Khan refused a direction given to him by Prather. She completed a so-called CARE ("Coaching and Recognizing Excellence") form, the standard form used by OCB to document unsatisfactory behavior and deficient performance of an employee. Prather "wrote up" Khan twice on October 28, 2004, when he twice refused to perform tasks specifically assigned to him by Prather. Prather also noted on the October 28, 2004, CARE form that Khan's continued insubordination would lead to termination. Khan contumaciously refused to accept, discuss, or to sign the forms prepared by Prather, although the form contains a space wherein the employee can describe his disagreement with the discipline. Sommer and Hughes reviewed the CARE forms and, as recommended by Prather, terminated Kahn's employment effective November 1, 2004.

Meanwhile, on April 29 2004, the Maryland Commission on Human Relations, to whom Khan's charge of discrimination had been deferred, had issued a "no probable cause" finding as to Khan's charge of discrimination, harassment, and retaliation. Thereafter, on or about October 26, 2004, upon the EEOC's adoption of that determination,  Khan received a right to sue, and he timely filed this action.

II.

Pursuant to Fed. R. Civ. P. 56 (c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

247 (1986). A fact is material for purposes of summary judgment, if when applied to the

substantive law, it affects the outcome of the litigation. *Id*. at 248.  Summary judgment is

also appropriate when a party "fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party opposing a properly supported motion for summary judgment bears the

burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S.

at 248-49.  "When a motion for summary judgment is made and supported as provided in

[Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse

party's pleading, but the adverse party's response, by affidavit or as otherwise provided in

[Rule 56] must set forth specific facts showing that there is a genuine issue for trial."  Fed.

R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252; *Shealy v.

Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).  Of course, the facts, as well as justifiable

inferences to be drawn therefrom, must be viewed in the light most favorable to the

nonmoving party. *Matushita Elec. Indust. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587-88

(1986).  The court, however, has an affirmative obligation to prevent factually unsupported

claims and defenses from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d

1126, 1128 (4th Cir. 1987).

III.

The standards applicable to the claims in this case are well known:

> In order to prevail on a claim of disparate treatment, [plaintiff] must first establish that [he] complains about a materially adverse employment action, an ""employment injury,"" and not simply ""interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within . . . Title VII."" *See Settle v. Baltimore County,* 34 F.Supp.2d 969, 987 (D.Md.1999) (citations omitted), *aff'd,*203 F.3d 822, 2000 WL 51283 (4th Cir.2000)(table); *see also Pennsylvania State Police v. Suders,* ---U.S. ----, ----, 124 S.Ct. 2342, 2353, 159 L.Ed.2d 204 (2004) (listing hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as ""tangible employment actions"").""Not everything that makes an employee unhappy is an actionable adverse action."" *Settle,* 34 F.Supp.2d at 989 (quoting *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359 (8th Cir.1997)).
> Assuming that a plaintiff has appropriately focused on a material adverse employment action, then the plaintiff must project evidence that but for the defendant's discriminatory motive in whole or in part, [he] would not have been subjected to the adverse action. *Mereish v. Walker,* 359 F.3d 330, 334-35 (4th Cir.2004); *Williams v. Cerberonics, Inc.* 871 F.2d 452, 458 (4th Cir.1989); *Malina v. Baltimore Gas and Electric Co.,* 18 F.Supp.2d 596, 607 (D.Md.1998). A plaintiff can prove such discriminatory animus under ordinary principles of proof using direct or indirect evidence, or in the alternative, under the judicially created ""shifting burdens"" method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Henson v. Liggett Group Inc.,* 61 F.3d 270, 274-75 (4th Cir.1995)(applying *McDonnell Douglas* proof scheme in ADEA cases).
> Under the *McDonnell Douglas* framework, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Texas Dept. of Comty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Provided that the plaintiff establishes a prima facie case, the defendant has the burden of production to articulate that the reason for the adverse action is a legitimate, nondiscriminatory one. *Id.* at 254-55. Upon the defendant's showing that such a reason exists, the burden shifts back to the plaintiff to show that the proffered reasons are pretextual. *Id.*
> In evaluating a disparate treatment case at the summary judgment stage, it is important to recall that the subjective beliefs and opinions of the plaintiff

will seldom be sufficient to permit plaintiff to avoid summary judgment. *Cf. King v. Rumsfeld,* 328 F.3d 145, 149 (4th Cir.2003) (""[Plaintiff's] own testimony, of course, cannot establish a genuine issue as to whether [plaintiff] was meeting [the employer's] expectations.""), *cert. denied,* 540 U.S. 1073, 124 S.Ct. 922, 157 L.Ed.2d 742 (2003); *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 279 (4th Cir.) (noting that in adjudicating discrimination claims, courts should not be drawn into the role of mediating differences of opinion as to job performance between supervisors and subordinates), *cert. denied,* 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 125 (2000). Likewise, the court is not to serve as a ""super personnel administrator"" by evaluating the wisdom, fairness or correctness of adverse employment actions. *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir.1998) (""[I]t is not our province to decide whether the reason [for an adverse employment action] was wise, fair, or even correct."").

*Treat v. Garrett County Memorial Hospital,* 2004 WL 2980743, *6 (D.Md., Dec. 23, 2004) (footnote omitted).[3]

### III.

Khan asserts that he suffered three adverse employment actions: first, he asserts that his removal from the internal management training program was discriminatory; second, he asserts that OCB's denial of his transfer request was discriminatory and retaliatory; and, finally, he asserts his termination was discriminatory and retaliatory. Application of the above legal standards compels the conclusion that defendant is entitled to judgment as a matter of law as to all such claims.

### A.

Plaintiff was placed in OCB's internal promote program and subsequently removed

---

[3]The "shifting burdens" paradigm applies as well to retaliation claims. *Bryan v. Lucent Technologies, Inc.*, 307 F.Supp.2d 726, 737 (D.Md.), *aff'd*, 112 Fed.Appx. 285 (4th Cir. 2004).

in 2002. Plaintiff claims his removal from the program is actionable because Hughes discriminated against him in doing so, but he has failed to establish a prima facie case as to this claim. Plainly, Khan has not generated a genuine dispute of material fact as to whether he was making sufficient progress in the promotion program to justify his continuation in the program. The transcript of plaintiff's own deposition in this case is highly suggestive of some difficulty on his part in communicating in English, but in any event, it is not a proper role for this court to secondguess the defendant's determination to offer remedial language skills training to plaintiff as a precondition to his continuation in the program.

Khan asserts that he was treated differently than other employees similarly situated, but he has failed to provide probative evidence to support this assertion. Indeed, plaintiff, a native Pakistan, has alleged that a Nigerian-born employee with an accent was appointed to the vacancy created by his removal from the promotion program. This fact would undermine, not support, plaintiff's claim that his removal from the program was driven by discrimination based on *national origin*.

## B.

As for plaintiff's claim regarding to his request to transfer to the Catonsville OCB, as a matter of law, the denial of the transfer simply did not effect a change in the terms and conditions of Khan's employment such that the denial constituted an adverse employment action. Moreover, even if the denial of the transfer was an adverse employment action, plaintiff has not rebutted the defendant's showing of a legitimate non-discriminatory, non-

retaliatory reason for the denial. Accordingly, this claim fails.[4]

## C.

Finally, Khan's assertion that the termination of his employment was discriminatory and/or retaliatory plainly fails for two independent reasons. First, it is clear that Khan had a poor job performance record under Prather's supervision and, indeed, it is undisputed (leaving aside Khan's own subjective opinion) that he was guilty of repeated acts of insubordination as a supervisee of Prather. Thus, he cannot satisfy the "satisfactory performance" prong of his prima facie case of disparate treatment.

Equally compelling, however, that same evidence-- repeated undocumented instances of unacceptable conduct followed by three written citations for misconduct and poor performance within a period of two weeks, fatally undercuts Khan's attempt to generate a genuine dispute of material fact as to pretext. Inexplicably, Khan refused to sign the CARE forms or to exercise his prerogative to include his own contemporaneous account of his disputes with his supervisor. This, even though he clearly knew that he was certainly headed for litigation against his employer on the basis of a long-standing charge of discrimination. Accordingly, even assuming Khan has demonstrated a causal relationship between his

---

[4]As a matter of law, plaintiff's reliance on the Cameron affidavit, submitted by the former manager of the Catonsville restaurant, is insufficient to generate a dispute of material fact. It is clear that all three managers, Hughes, Sommer and Cameron, were involved in the decision whether to permit plaintiff's transfer. The mere fact that Cameron disagreed with the decision of his colleagues is not probative of Hughes's discriminatory animus. Nor is the character opinion offered by Cameron sufficient to generate a genuine dispute of material fact under the circumstances of this case.

invocation of his rights and the termination of his employment sufficient to establish a prima facie case of retaliation,[5] or that he has established a prima facie case of disparate treatment on the basis of national origin, both his retaliation claim and his disparate treatment claim fail as a matter of law at the "pretext stage."[6]

IV.

For the reasons set forth, the motion for summary judgment shall be granted and judgment entered in favor of defendant. An order follows.

Filed: February 6, 2006                                    /s/
                                                    ANDRE M. DAVIS
                                                    UNITED STATES DISTRICT JUDGE

---

[5] As a matter of law, Khan has not demonstrated that the filing of the charge of discrimination in 2003 was causally related to the termination of his employment in October 2004.

[6] There is no substantial evidence in the record that Khan was subjected to a hostile environment. Proof of such a claim must be based on more than a plaintiff's subjective feelings that he has been mistreated.